## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES MARCUS CRABTREE,    )
    )
        Plaintiff,    )
    )
        v.    )    1:13CV26
    )
CAROLYN W. COLVIN,    )
Acting Commissioner of Social    )
Security,    )
    )
        Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Charles Marcus Crabtree, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 11, 16). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on November 23, 2009, alleging a disability onset date of February 1, 2009. (Tr. 220-28.) Upon denial of that application initially (Tr. 74-103, 142-53) and on reconsideration (Tr. 104-35, 158-75), Plaintiff requested a hearing de novo before an Administrative Law Judge

("ALJ") (Tr. 176). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 41-73.) By decision dated July 11, 2011, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 27-40.) On June 20, 2012, the Appeals Council denied Plaintiff's request for review (Tr. 4-8), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2014.

2.   [Plaintiff] has not engaged in substantial gainful activity since February 1, 2009, the alleged onset date.

. . . .

3.   [Plaintiff] has the following severe impairments: thoracic disc disease; narcolepsy; sleep apnea; attention deficit disorder (ADD); osteoarthritis[;] obesity[;] depression and anxiety.[1]

. . . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

5.   . . . [Plaintiff] has the residual functional capacity to perform light work . . . except he should avoid activities around unprotected heights and dangerous machinery. [Plaintiff] is limited to simple, routine, repetitive tasks. He is capable of lifting/carrying 20

---

[1] The ALJ found that Plaintiff's hypertension and hypothyroidism constituted non-severe impairments. (Tr. 32.)

pounds occasionally and 10 pounds frequently. In an 8-hour workday, [Plaintiff] is capable of standing and/or walking 6 hours and sitting 6 hours.

. . . .

6.   [Plaintiff] is unable to perform any past relevant work.

    . . . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

    . . . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from February 1, 2009, through the date of this decision.

(Tr. 32-40 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal

3

standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based

4

upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

5

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')."  Id. at 179.[4]  Step four then requires the ALJ to assess

---

[3]   "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[4]   "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) "[t]he ALJ erred by giving less than controlling weight to the opinion of [Plaintiff's] treating physician . . . [and] by failing to recontact [that physician]" (Docket Entry 12 at 3);

(2) "[t]he ALJ's rejection of [Plaintiff's] testimony was the result of 'playing doctor'" (id. at 5);

(3) "[t]he ALJ erred by posing a hypothetical which failed to inform the VE that [Plaintiff] would have significant difficulty sustaining concentration to perform simple tasks" (id. at 6); and

(4) "[t]he ALJ erred by posing a hypothetical that failed to mention [Plaintiff's] need for a low-stress, non-production environment, with low interpersonal demands" (id. at 7).

Defendant contends otherwise and seeks affirmation of the ALJ's decision. (Docket Entry 17 at 3-16.)

## 1. Treating Physician Opinion

In Plaintiff's first issue on review, he challenges the ALJ's evaluation of the opinions of treating physician Dr. Carlton D. Miller. (Docket Entry 12 at 3-5 (citing Tr. 546-49).) Plaintiff alleges that the grounds cited by the ALJ for rejecting Dr. Miller's opinions did not suffice, arguing that "rejection of the treating physician's opinion must be based on 'persuasive contradictory evidence,'" and citing Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). (Id. at 4.) Plaintiff's argument on these points falls short.

8

At the outset, Plaintiff's phrasing of the "treating physician rule" as including the "persuasive contradictory evidence" language no longer represents the governing standard. <u>See</u> <u>Stroup v. Apfel</u>, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) (expressly rejecting "persuasive contradictory evidence" standard and noting that "[t]he 1991 regulations supersede[d] the 'treating physician rule' from our prior case law"); <u>Shrewsbury v. Chater</u>, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) (observing that, "[a]s regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to [the 1991] regulations are not controlling" (internal citation omitted)); <u>Brown v. Astrue</u>, Civil Action No. CBD10-1238, 2013 WL 937549, at *4 (D. Md. Mar. 8, 2013) (unpublished) (deeming "persuasive contradictory evidence" a "defunct legal standard" in light of 1991 regulations); <u>Benton v. Astrue</u>, Civil Action No. 0:09-892-HFF-PJG, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished) (holding that 1991 regulation "supersedes any prior Fourth Circuit's common law treating physician rule that is contrary to it"); <u>Winford v. Chater</u>, 917 F.Supp. 398, 400 (E.D. Va. 1996) (finding "persuasive contrary evidence . . . the wrong legal standard"); <u>Ward v. Chater</u>, 924 F. Supp. 53, 55-56 (W.D. Va. 1996) (recognizing that 1991 regulations supersede "persuasive

9

contradictory evidence" standard).  The fact that, in <u>Johnson</u>, the
Fourth Circuit stated that an ALJ <u>could</u> discredit treating
physician opinion in light of "persuasive contrary evidence,"
<u>Johnson</u>, 434 F.3d at 654 n.5, does not mean (as Plaintiff suggests)
<u>any</u> rejection of such opinion "must be based on 'persuasive
contradictory evidence'" (Docket Entry 12 at 4 (emphasis added)).
<u>See, e.g.</u> <u>Craig</u>, 76 F.3d at 590 (recognizing that, if treating
source's opinion "is not supported by clinical evidence <u>or</u> it is
inconsistent with other <u>substantial</u> evidence, it should be accorded
significantly less weight" (emphasis added)).

    The treating source rule, as correctly stated, generally
requires an ALJ to give controlling weight to the opinion of a
treating source regarding the nature and severity of a claimant's
impairment.    20   C.F.R.   §§   404.1527(c)(2),   416.927(c)(2)
("[T]reating sources . . . provide a detailed, longitudinal picture
of [a claimant's] medical impairment(s) and may bring a unique
perspective to the medical evidence that cannot be obtained from
the objective medical findings alone or from reports of individual
examinations,   such   as   consultative   examinations   or   brief
hospitalizations.").  The rule also recognizes, however, that not
all treating sources or treating source opinions merit the same
deference.  The nature and extent of each treatment relationship
appreciably tempers the weight an ALJ affords an opinion.  20
C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).   Moreover, as

subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig</u>, 76 F.3d at 590 (emphasis added).

In this case, on April 25, 2011, Dr. Miller completed a Medical Source Statement ("MSS") on which he reported that Plaintiff suffered from "ADD/sleep narcolepsy" and "severe osteoarthritis" (Tr. 546) and, as a result of those impairments, opined that Plaintiff could sit for one hour at a time and for more than six hours in a work day, could stand and walk for one hour at a time and for two hours total in a work day, would need to rest in excess of standard work breaks, and would miss work in excess of three days per month (Tr. 547-49). In addition, Dr. Miller noted that Plaintiff's "narcolepsy med[ication]s interfere with concentration" (Tr. 547) and that Plaintiff could never repetitively use either hand for reaching, handling, or fingering (Tr. 549). Dr. Miller concluded that Plaintiff's impairments had

"persisted with the restrictions as outlined in [the MSS] at least since . . . 2007."  (Tr. 550.)[6]

Here, the ALJ's evaluation of Dr. Miller's opinions complied with the regulatory requirements.  The ALJ assessed Dr. Miller's opinions as follows:

> Dr. Miller's opinion conflicts with his own treatment records as well as [Plaintiff's] own statement and ability to work.  Specifically, Dr. Miller opined [Plaintiff] was unable to use his hands.  There is no indication in treatment records that [Plaintiff] complained of hand problems and [Plaintiff] testified that he drives and is able to lift/carry light bags.  Dr. Miller indicated [Plaintiff's] narcolepsy medication impaired his concentration but there are no notations in treatment records that [Plaintiff] reported any medication side effects.  Dr. Miller opined [Plaintiff] has been so restricted since 2007 but [Plaintiff] worked full-time until 2009 despite the very limited restrictions Dr. Miller assessed.  Little weight is given to Dr. Miller's opinion.

(Tr. 37.)

As correctly noted by the ALJ, Dr. Miller's treatment records did not evidence that Plaintiff ever "complained of hand problems" (see Tr. 349-52, 390-425, 443-51, 486-506) and thus did not support Dr. Miller's opinion that Plaintiff could "[n]ever" use his hands to reach, handle or finger (Tr. 549).  Plaintiff nevertheless argues that Dr. Miller's failure to support Plaintiff's hand limitations "does not supply a valid rationale for rejecting [Dr. Miller's] *other* well-founded opinions."  (Docket Entry 12 at 4

---

[6] The administrative record lacks page 4 of the MSS and, due to that omission, also lacks Dr. Miller's responses to questions 14 through 17 of the MSS. (See Tr. 548-49.)

(emphasis in original).)  However, the ALJ did not rely upon Dr. Miller's lack of support for Plaintiff's hand restrictions as the sole basis to discount all of Dr. Miller's opinions.  (See Tr. 37.) As described above (and as Plaintiff has at least in part acknowledged (see Docket Entry 12 at 4)), the ALJ also discounted Dr. Miller's opinions because his treatment records did not reflect that Plaintiff ever complained of side effects from his narcolepsy medication and because, despite Dr. Miller's opinion that Plaintiff's outlined restrictions had persisted since 2007, Plaintiff worked full-time from 2007 to 2009 (Tr. 37). Additionally, in another part of the ALJ's RFC analysis, he observed that Dr. Miller's treatment records reflected "that generally, [Plaintiff was] healthy, well appearing in no acute distress" and that "unremarkable" examinations showed "normal strength bilaterally, normal reflexes, normal gait, normal cognition," and normal neurological findings.  (Tr. 36.) Substantial evidence thus supports the ALJ's decision to discount Dr. Miller's opinions in part because his own treatment records failed to support those opinions.

Plaintiff further disputes the ALJ's finding that Dr. Miller's records do not support his opinion that Plaintiff's narcolepsy medications interfere with his concentration.  (Docket Entry 12 at 4-5.)  In that regard, Plaintiff argues that "the known side effects of Provigil, [Plaintiff's] narcolepsy medication, are

13

anxiety and depression, both of which interfere with concentration"
and that "[i]t is undisputed that [Plaintiff] had anxiety and
depression[] and . . . moderately limited concentration." (Id.
(citing http://www.drugs.com/sfx/ provigil-side-effects.html).)
According to Plaintiff, Dr. Miller thus "reasonabl[y] . . .
attribut[ed] part of [Plaintiff's] concentration limitations to his
medication, even though [Plaintiff] . . . may not have made the
connection between his concentration problems and his use of
Provigil." (Id. at 5.) Plaintiff asserts that the "layman ALJ"
should have re-contacted Dr. Miller about Plaintiff's medication
side effects, "rather than jump to the conclusion that the
physician does not know what he's talking about." (Id.)

Plaintiff's argument misses the mark, because Dr. Miller's
treatment records do not reflect that he diagnosed Plaintiff with
either depression or anxiety as a side-effect of Provigil. (See
Tr. 349-52, 390-425, 443-51, 486-506.) Plaintiff's argument
attempts to gloss over the critical missing link between the side
effects of Provigil as identified on http://www.drugs.com/sfx/
provigil-side-effects.html and Plaintiff's diagnoses of depression
and anxiety – i.e., a medical source's opinion that Plaintiff's
Provigil caused his depression and anxiety. Plaintiff's assumption
that his Provigil caused his depression and anxiety constitutes the
very speculation he accuses the ALJ of engaging in.

14

Although Plaintiff urges that the ALJ should have re-contacted Dr. Miller regarding Plaintiff's side effects from his narcolepsy medications, Plaintiff does not claim that any of Dr. Miller's treatment records are incomplete, vague, confusing, or missing from the record. Thus, the ALJ had sufficient evidence (including two consultative examinations (Tr. 426-30, 431-37)) upon which to determine whether Plaintiff suffered any side effects from his medications and thus had no duty to re-contact Dr. Miller. See, e.g., Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled.") (citing 20 C.F.R. § 404.1512(e)); White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) ("[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receives from the claimant's treating physician' that triggers the duty.") (quoting 20 C.F.R. § 416.912(e)); Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) (finding no duty to contact when "[t]he ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability").

Lastly, Plaintiff maintains that the ALJ should not have discounted Dr. Miller's opinions because "Ms. Sarah Cameron, MA, . . . also stated that [Plaintiff] was disabled by narcolepsy and

depression." (Docket Entry 12 at 5 (citing Tr. 453).) However, the ALJ gave Ms. Cameron's opinion "little weight," noting that Plaintiff's depression remained "controlled," that Plaintiff drove "several times a week," and that Ms. Cameron's statement that Plaintiff "clear[ly] could not complete activities of daily living" (Tr. 453) contradicted Plaintiff's "report to a consultative psychological examiner that he independently maintain[ed] activities of daily living" (Tr. 37 (referring to Tr. 434)). Notably, Plaintiff did not challenge the ALJ's decision to discount Ms. Cameron's opinion and thus her opinion provides no basis to afford any additional weight to Dr. Miller's opinions.

In sum, substantial evidence supports the ALJ's decision to discount the opinions of Dr. Miller.

## 2. Credibility

Next, Plaintiff asserts that the ALJ erred by "discount[ing] Plaintiff's allegations of frequent narcolepsy" and erroneously found that "narcolepsy unaccompanied by cataplexy cannot be disabling." (Docket Entry 12 at 5-6.) Plaintiff emphasizes that Dr. Miller deemed Plaintiff's narcolepsy (without accompanying cataplexy) disabling, and that a physician rather than an ALJ must resolve such a medical issue. (Id. at 6.) Plaintiff alleges that the ALJ "played doctor" and "found a false reason to disbelieve [Plaintiff]." (Id.)

16

Plaintiff's argument fails for the straightforward reason that the ALJ did <u>not</u> find that Plaintiff's narcolepsy could not render him disabled <u>because</u> it was unaccompanied by cataplexy. Rather, the ALJ merely noted that "[t]reatment records document [Plaintiff's] narcolepsy but without cataplexy." (Tr. 35.) Indeed, Dr. Miller diagnosed Plaintiff with "[n]arcolepsy without cataplexy" in numerous treatment records. (<u>See</u> Tr. 406, 408, 410, 413, 416, 419, 444, 498; <u>see also</u> Tr. 476, 534 (wherein Plaintiff denied cataplexy to other treating physicians).) The ALJ then proceeded to discount the severity of Plaintiff's narcolepsy on the basis of Plaintiff's ability to continue driving, the absence of complaints in the treatment records of falling asleep as frequently as Plaintiff alleged at the hearing (<u>see</u> Tr. 53-54, 64), and the lack of "noted objective findings during the many times he was seen in follow-up over the years" (Tr. 36). The ALJ's analysis of Plaintiff's credibility with regard to his narcolepsy thus complies with the Commissioner's regulations. <u>See</u> 20 C.F.R. §§ 404.1529(c), 416.929(c) (requiring ALJs, in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, to consider the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; any side effects of medications; any treatment other than medication; and any other measures used to relieve symptoms).

Accordingly, the Court should reject Plaintiff's second assignment of error.

## 3. Hypothetical Question

In his third and fourth assignments of error, Plaintiff takes issue with the ALJ's hypothetical question to the VE. According to Plaintiff, the ALJ's hypothetical question failed to include Plaintiff's "significant difficulty sustaining concentration to perform simple tasks" (Docket Entry 12 at 6 (citing Tr. 437)) and his "need for a low-stress, non-production environment, with low interpersonal demands" (id. at 7 (citing Tr. 95, 97, 130, 437)). Plaintiff's argument provides no basis for relief.

The Fourth Circuit has held that "[i]n order for a vocational expert's opinion to be relevant or helpful . . . it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Significantly, "[t]here is no obligation . . . to transfer [detailed psychiatric] findings verbatim to the hypothetical questions." Yoho v. Commissioner of Soc. Sec., No. 98-1684, 168 F.3d 484 (table), 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (unpublished). So long as a hypothetical adequately encompasses the effects of a claimant's mental limitations, it suffices. See id.; Chavis v. Shalala, No. 93-1915, 28 F.3d 1208 (table), 1994 WL 319163, at *2-3 (4th Cir. July 5, 1994) (unpublished); see also Stubbs-Danielson v. Astrue, 539 F.3d 1169,

18

1174 (9th Cir. 2008) (ruling that ALJ properly characterized claimant's ability as encompassing "simple tasks" notwithstanding failure to recite verbatim expert's description of claimant's "restrictions related to concentration, persistence, or pace"); <u>Cox v. Astrue</u>, 495 F.3d 614, 620 (8th Cir. 2007) (holding that proper hypothetical questions need only capture "the concrete consequences of a claimant's deficiencies").

a. Limitation on Concentration

At step three of the SEP, the ALJ found that Plaintiff's depression and anxiety did not meet or equal any of the listed impairments (Tr. 33-34) but, as part of that analysis, assessed Plaintiff with "moderate" limitation in concentration, persistence, and pace (Tr. 33). The ALJ then formulated Plaintiff's mental RFC, finding that, despite his moderate difficulties concentrating, he remained capable of performing "simple routine repetitive tasks." (Tr. 34.) As part of the ALJ's analysis of Plaintiff's mental RFC, the ALJ expressly considered consultative psychologist Dr. Jonas A. Horwitz's opinion that Plaintiff would have significant difficulty sustaining concentration to perform simple tasks (Tr. 437), but ultimately gave that opinion "little weight" (Tr. 38). In that regard, the ALJ noted that Dr. Horwitz's opinion contradicted Dr. Miller's assessment that Plaintiff's pain "[s]eldom" interfered

with his attention and concentration. (Id. (citing Tr. 547).)[7] Although Plaintiff correctly remarks that Dr. Miller did state that Plaintiff's narcolepsy medications interfered with his concentration (see Docket Entry 12 at 7 (citing Tr. 547)), as discussed above, the ALJ properly discounted that opinion as unsupported by Dr. Miller's own treatment records (Tr. 37). As the ALJ's rejection of Dr. Horwitz's opinion regarding Plaintiff's difficulty concentrating did not constitute error, the ALJ also did not err by failing to include such a limitation in his hypothetical question to the VE.

   b.   Limitation to Low Stress Jobs and Low Interpersonal
        Demands

Plaintiff maintains that the ALJ's hypothetical should have included a limitation to low stress jobs based upon the opinion of state agency psychologist Tovah M. Wax that Plaintiff required "a low stress env[ironmen]t with low production." (Docket Entry 12 at 7 (citing Tr. 95).) According to Plaintiff, both state agency psychologist Dr. Clifford H. Charles and Dr. Horwitz supplied opinions consistent with Dr. Wax's "low stress" opinion. (Id. (citing Tr. 130 (containing Dr. Charles's opinion that Plaintiff's

---

[7] Additionally, the ALJ remarked that Plaintiff's concentration during Dr. Horwitz's examination "appeared adequate" (Tr. 37), which finds support in Plaintiff's ability to sufficiently respond to most of Dr. Horwitz's mental status questions intended to assess Plaintiff's orientation to time, person, place, and purpose; fund of knowledge; ability to calculate; abstract thinking; judgment; memory; and concentration (Tr. 434-36). Indeed, the only references in Dr. Horwitz's report of difficulty concentrating, beyond the opinion at issue, occur where Dr. Horwitz recited Plaintiff's subjective complaints of decreased concentration. (Tr. 433, 434, 437.)

"overall adaptive and stress tolerance capacity [was] moderately compromised"), 437 (reflecting Dr. Horwitz's opinion that Plaintiff's "significant sleep disorder would significantly impair [Plaintiff's] ability to tolerate the stress and pressures associated with day to day work activity")).)

Contrary to Plaintiff's assertions, substantial evidence supports the ALJ's omission of a limitation to low stress jobs from the hypothetical question. Significantly, both Plaintiff and his wife rated Plaintiff's ability to handle stress on Function Reports as "[o]verall good" and "well," respectively. (Tr. 256, 264.) Further, Plaintiff's treating physician, Dr. Miller, noted on his MSS that Plaintiff had "[n]o limitation" dealing with work stress. (Tr. 547.) With regard to Dr. Charles's opinion, although he did find Plaintiff's "overall adaptive and stress tolerance capacity moderately compromised" (Tr. 115), he nonetheless concluded that Plaintiff remained capable of simple, routine, repetitive tasks ("SRRTs"), and did not include an express limitation to low stress jobs (id.). The ALJ gave Dr. Charles' opinion "great weight" (Tr. 38), and limited Plaintiff to SRRTs in the RFC determination (Tr. 34). Finally, the ALJ gave Dr. Horwitz's opinion that Plaintiff had significantly impaired ability to tolerate work stress and pressure "little weight" because such opinion conflicted with Dr. Miller's finding that Plaintiff had "[n]o limitation" in his ability to tolerate stress. (Tr. 38; see also Tr. 437, 547.)

Finally, Plaintiff argues that the ALJ should have included a restriction to jobs with "low interpersonal demands" in his hypothetical, based upon the opinion of Dr. Wax, in conjunction with the Psychiatric Review Technique, that Plaintiff required an "env[ironmen]t with low . . . interpersonal demands." (Docket Entry 12 at 7 (citing Tr. 95).) However, Dr. Wax also assessed Plaintiff's mental RFC, which requires a more detailed assessment than the Psychiatric Review Technique. See Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *4 (July 2, 1996). In that RFC, Dr. Wax found that Plaintiff had no social interaction limitations (Tr. 86), as did Dr. Charles (Tr. 114). Substantial evidence thus supports the ALJ's omission of "low interpersonal demands" from the hypothetical.

In sum, Plaintiff's third and fourth assignments of error fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 2, 2015